Esther M. BERGMAN, Appellant,

v.

BOARD OF TRUSTEES OF FIREMEN'S RETIREMENT SYSTEM OF ST. LOUIS, Missouri, Respondent.

No. 52739.

Supreme Court of Missouri, Division No. 2.

March 11, 1968.

Wm. G. O'Donnell, Abraham Davis, St. Louis, for appellant.

Thomas F. McGuire, City Counselor, Aubrey B. Hamilton, Assoc. City Counselor, St. Louis, for respondent.

STOCKARD, Commissioner.

This is an appeal from the judgment of the Circuit Court of the City of St. Louis wherein it "dismissed" the petition of Esther M. Bergman, filed pursuant to the Administrative Procedure Act, Chapter 536, RSMo 1959, V.A.M.S., for review of the finding and decision of the Board of Trustees of The Firemen's Retirement System of St. Louis, Missouri.

Appellant's husband Walter Bergman, died on October 18, 1956, while a member (Fire Marshal) in good standing of the St. Louis Fire Department. As his unremarried widow, appellant has been paid and is receiving a pension from the Board of Trustees. She contends that her husband was "killed or fatally injured in the line of duty" within the meaning of Section 32 of Ordinance 48174 of the City of St.

Louis, and for that reason she is, and has been since his death, entitled to a larger pension. The accrued amount to which she claims she is entitled at the time of this appeal, over and above the amount previously paid to her, exceeds $15,000.

On October 14, 1956, a Sunday, a fire occurred in a building at 3618 Laclede, St. Louis, owned by the Rothlan Corporation, which manufactured or processed chemicals. In the building were numerous chemicals both organic and inorganic, some of which were toxic. One of these toxic chemicals was ortho nitroaniline. The fire was not extensive and was soon extinguished, but in the building and in the area there was an odor of chemical fumes. Marshal Bergman arrived at the scene after the fire was extinguished. He was seen outside the building, and he was also seen, apparently inside the building, "sniffing the bottles" of chemicals and reading the labels on them. When he returned home he told his wife he was "feeling sick because it was a chemical fire" and that he would not be able to eat. On Monday he reported for work, and worked until Thursday when he went to see Dr. Otis D. Seabaugh, his family doctor. During the week while at work he had complained that his stomach bothered him, that he felt sick, his arm and chest hurt, and that he was short of breath. Dr. Seabaugh advised him to go to the hospital, but he returned to work. Later that day he was taken home and then by ambulance to the hospital where he died within ten minutes after arrival. The cause of his death was a coronary thrombosis.

Marshal Bergman had a history of a heart condition. In 1949 he had a "mild attack of coronary thrombosis," and in 1951 it was determined that he had a "heart insufficiency."

Dr. Seabaugh testified that anyone who has a heart condition is advised to live within his heart's capacity to function, and he should do nothing that would draw stress upon organs of respiration. He further stated that "if you inhaled a toxin in the lungs and you get a little impairment of the pulmonary circulation, that could be undue strain on his heart muscles and the after effects from the toxin could act on the heart." He stated that he could not "think of a case" of a thrombosis being caused by toxic poisoning, but "it can be a contributing factor," and that in his opinion inhaling of toxic chemicals "was a contributing cause" of Marshal Bergman's death.

Dr. R. Emmett Kelly, who was physician and medical director of Monsanto Chemical Company, testified for the Board of Trustees. He stated that ortho nitroaniline is an organic compound capable of uniting with the hemoglobin of the blood and causing what is technically called met hemoglobin. The chemical is capable of being absorbed by the body when taken by mouth or after dust or fumes are inhaled, and when dissolved it can pass through unbroken skin. When it unites with the hemoglobin it destroys the oxygen carrying power of the red corpuscles. The person affected develops a dusky color and then a blueness. Dr. Kelly said that the chemical does not have a "particularly pungent" odor and would have no effect on the respiratory system, but could cause choking if inhaled in large quantities. He also stated that he had not had any experience with the chemical causing throat irritation when inhaled, and that individuals have inhaled enough "to be bluish before they know it." When absorbed through the skin it "can cause stomach illness and even death" but it would not be absorbed by picking up a jar and smelling it. Also, smelling of the chemical would "not usually" cause "nausea or shooting pains." It was Dr. Kelly's opinion that in the absence of blueness, the inhalation of the chemical would not have any effect on the heart, and that ortho nitroaniline could not cause the formation of a thrombus, nor would it have any connection with a coronary thrombosis, and the fact that a person inhaled fumes from this chemical one day

would not result in ill effects three or four days later. He said that exposure to the chemical does not have a permanent effect.

Dr. Julius Elson, a heart specialist, testified that he knew of no chemical fumes which if breathed by an individual would cause coronary thrombosis, and that he could not see any possible connection between breathing chemical fumes and the formation of a thrombus. He also testified that "no one has ever shown" that deprivation of oxygen from the blood stream can precipitate a thrombosis in an artery, and that he knew of no theory that toxicity precipitated a coronary thrombosis.

The Board of Trustees made the following findings of fact:

"(1) That Walter P. Bergman, Fire Marshal of the City of St. Louis, was on active duty on October 18, 1956;

"(2) That a fire occurred at 8:59 A.M. on October 14, 1956, at 3618 Laclede Ave., St. Louis, Missouri;

"(3) That Chief Bergman appeared at the scene of the fire on October 14, 1956, at approximately 10:45 A.M.;

"(4) That Chief Bergman investigated conditions at the scene after the fire;

"(5) That Chief Bergman was stricken with a heart attack on October 18, 1956, and was hospitalized and died the same date, October 18, 1956.

"(6) That the medical records of Chief Bergman on file in the office of the Retirement System and the Office of the Chief of the Fire Department, reflect treatment for a heart condition on July 7th, 1951, and in 1949;

"(7) That there is no evidence in the record which shows unusual exertion during his investigation on October 14, 1956;

"(8) That there is no evidence sufficient to cause the Board to believe that chemical fumes were inhaled by Chief Bergman in any amount sufficient to cause death by adverse effect on his heart."

The following conclusions of law were adopted by the Board.

1. The Board finds that there is no causal connection between the inhalation of fumes and death;

2. The board finds that Walter P. Bergman was not killed or fatally injured in the line of duty.

On this appeal appellant contends that the findings of fact and conclusions of law are "unsupported by competent and substantial evidence upon the whole record." She also contends that the trial court should have made its own findings of fact because only one member of the Board was present at all of the hearings, and the trial court was in as good a position as the Board to weigh the evidence.

■ Section 536.140, RSMo 1959, V.A. M.S., (see also Civil Rule 100.07, V.A. M.R.) provides that the scope of review by a court of the action of an administrative agency subject to the review provisions of the Administrative Procedure Act shall, among other things, extend to a determination whether the action is "unsupported by competent and substantial evidence upon the whole record." That section also provides in subsection 3 thereof that "Whenever the action of the agency being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts, the court may weigh the evidence for itself and determine the facts accordingly," but that in making such determination "the court shall give due weight to the opportunity of the agency to observe the witnesses." This case does not involve the exercise by the Board of Trustees of any administrative

discretion in light of the facts. After the facts are determined, appellant either is or is not entitled to the increased pension benefits as a matter of law. Therefore, in determining whether the action of the Board of Trustees is supported by competent and substantial evidence, this court may weigh the evidence and determine the facts accordingly, subject to the above rule of deference to the extent appropriate under the circumstances.

Edwards v. Firemen's Retirement System of St. Louis, Mo.App., 410 S.W.2d 560; Mitchell v. City of Springfield, Mo. App., 410 S.W.2d 585; and Heusmann v. Priest, Mo.App., 366 S.W.2d 42, are disapproved insofar as they hold that in this situation a reviewing court may not weigh the evidence and make its own findings of fact.

Appellant argues that Dr. Seabaugh testified that "the toxic irritants" were a "factor" in Marshal Bergman's death, and that they could have aggravated his previous coronary condition; that Dr. Elson admitted that Marshal Bergman's symptoms indicated that "some process" was going on in his heart and that a person could have a coronary thrombosis precipitated on Sunday and die on the following Thursday. Appellant then argues that the testimony of Dr. Elson and Dr. Kelly was to the effect that fumes from ortho nitroaniline and the other chemicals could not *form* a clot in a blood vessel or *cause* a coronary thrombosis, but that she never claimed that they did. Her claim, she argues, is that the fumes and smoke *aggravated* a previous heart condition and *precipitated* the coronary thrombosis, and that this constituted an injury causing death within the meaning of the ordinance.

In this connection it becomes of some importance to comment on what the evidence does not show. Marshal Bergman was not, on October 14, or on any occasion thereafter and prior to his death, engaged in fighting a fire, or engaged in any strenuous activity in the performance of his duties. He did not arrive at the scene of the fire until after the fire had been extinguished and the building was being ventilated. The evidence shows that he was seen outside the building, and also was seen "sniffing the bottles," presumably while in the building. There is no evidence that he smelled any particular bottle or chemical, and there is no testimony as to the amount of ortho nitroaniline present, how it was stored, or whether its container was open or had been broken open or damaged by the fire. In fact, in view of the clearly established characteristics of ortho nitroaniline and its effect, there is no evidence from which it could be found that he inhaled the fumes of that chemical in sufficient amount to produce a reaction.

██ Marshal Bergman had a history of heart disease or coronary insufficiency. Appellant argues, and we think correctly so, that an aggravation, in the line of duty, of a pre-existing heart condition which precipitates a fatal coronary thrombosis, is an injury resulting in death which would entitle her to increased benefits. However, the increased pension sought is not in the form of insurance which is payable upon death regardless of the cause, but there must be a showing of a direct, but not necessarily sole, causal connection between Marshal Bergman's duties and his injury resulting in death. It is in this respect that appellant's claim fails.

██ Dr. Seabaugh's testimony as to causation is little more than that inhaling toxic fumes "might, could or would" contribute to cause a coronary thrombosis. See Ketcham v. Thomas, Mo., 283 S.W.2d 642, 649. However, he did testify, although we think with an inadequate showing of a basis therefor, that in his opinion the inhaling of toxic chemicals "was a contributing cause" of Marshal Bergman's death. On the other hand, there is no showing what toxic fumes were actually inhaled or that toxic fumes were inhaled in a sufficient amount to have an adverse effect,

except possibly on the basis that symptoms of heart trouble followed his presence at the scene of the fire. In addition, Dr. Kelly and Dr. Elson testified that inhaling toxic fumes could not cause a coronary thrombosis, that ortho nitroaniline would not have "any connection" with a coronary thrombosis, and that toxicity would not precipitate a coronary thrombosis. By this we understand their testimony to be that inhaling toxic fumes could not result in a coronary thrombosis, whether by creating the thrombus or by aggravating a previously existing condition.

Appellant cites numerous cases from other jurisdictions. In some, as in Board of Trustees of Firemen's Relief and Pension Fund of Ponca City v. Jobe, 198 Okl. 34, 174 P.2d 921, and Vernon v. Firemen's Pension Fund of Philadelphia, 160 Pa.Super. 617, 52 A.2d 199, the injury manifested itself while the person was engaged in strenuous activity in fighting a fire. In others, such as Gilman v. City of Long Beach, 111 Cal.App.2d 747, 245 P.2d 512, and Teachers' Retirement Board v. Contributory Retirement Appeal Board, 346 Mass. 663, 195 N.E.2d 318, there was expert testimony that an injury received in connection with the person's duties was contributing cause of subsequent disability or death. For the most part, each case turns on its own particular facts.

When we review and weigh the evidence in this case, and thereby determine the facts, we are forced to find the facts to be as found by the Board of Trustees, except we would revise finding of fact number 8 to provide that there is no evidence from which it may be found that chemical fumes were inhaled by Marshal Bergman in an amount sufficient to aggravate his previously existing heart condition and cause the coronary thrombosis which was the immediate cause of his death. A finding to the contrary would be based on speculation and conjecture, and it would be contrary to what we consider to be the competent and substantial evidence in the record.

The Board's action is consistent with the facts as we have found them, and is supported by competent and substantial evidence upon the whole record.

The judgment is affirmed.

BARRETT, C., concurs in result.

PRITCHARD, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.