Arthur G. VLASAK, Plaintiff-Appellant,

v.

ALTERNATIVE SYSTEM OF the POLICE RETIREMENT SYSTEM OF ST. LOUIS and John H. Poelker, H. Sam Priest, N. A. Sweets, Eugene P. Walsh, Robert W. Matteson, George D. Milne, and James F. Thompson, known as the Board of Trustees of the Alternative System of the Police Retirement System of St. Louis, Defendants-Respondents.

No. 32499.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Mantia & Allred, Thomas B. Maloney, Timothy G. Noble, St. Louis, for plaintiff-appellant.

Eugene P. Freeman, Acting City Counselor, Aubrey B. Hamilton, Associate City Counselor, St. Louis, for defendants-respondents.

WOLFE, Judge.

This is an appeal from a judgment of the Circuit Court affirming the findings and order of the Board of Trustees of the Alternative System of the Police Retirement System of St. Louis. The appellant Vlasak had been a police officer for thirty-three years. The police car which he was driving was struck by another car on November 16, 1962. Vlasak applied for accidental disability retirement on February 13, 1963. On May 16, 1963, the Board of Trustees denied accidental disability retirement but granted service retirement effective June 15, 1963. Thereafter Vlasak requested a hearing before the Board, and that hearing was had on July 22, 1964. The Board re-affirmed its grant of service retirement and denied accidental disability retirement. The petition for review of the decision was then filed in the Circuit Court with the resulting affirmance of the Board, followed by this appeal.

The transcript of the hearing before the Board presents the following facts. Vlasak had been a member of the St. Louis Police Department since January, 1930. He had served on the force until March 16, 1962. On that day he was driving a Police De-partment car in line of duty and the car came into collision with another motor vehicle. The other car ran through a stop sign, and Vlasak was in no way to blame for the collision. If Vlasak's retirement was under accidental disability he would be receiving a substantially larger amount than the regular retirement pay.

Vlasak testified at the hearing before the Board that he was knocked over and the police car was turned completely around. He was taken to the City Hospital where he was examined and x-rays were taken. He was "found to have no apparent injuries." He left the hospital and returned to his police district where he was given another car and he went on police duty in it. He was suffering at the time from a terrific headache, and his back and hip were hurting him. He had no difficulty of this kind before the accident, and after he was on duty for about an hour he returned to the police station, left the police car, and went to the office of Dr. Vitt, a Police Department doctor. He continued under the care of Dr. Vitt and did not again return to duty.

Vlasak testified that he still suffers from headaches and discomfort around the neck and shoulders. He said that this trouble has only slightly improved. He applied for a position as bank guard, but was rejected because of his physical condition. He had no employment until March, 1964, when he obtained a position as bank messenger. At this job he worked four or five hours a day in about two-hour shifts, one in the morning, and one in the afternoon. He was given a place at the bank where he could lie down. He quit that work after about three months, and at the time of the hearing he was working seven hours a day, one day a week as a bank messenger at $1.25 per hour.

Dr. Vitt testified that Vlasak came to his office about three or four hours after he had left the City Hospital. He told Dr. Vitt about the accident he had, and stated he was thrown against the left door of the

car and knocked to the floor; that he had a blinding sensation and seemed stunned by the crash. The pain in the back of his neck and low back began immediately and headaches in the back of his head soon followed. He stated he was helped from the patrol car and taken to City Hospital. He told Dr. Vitt that the headaches in the back of his head radiated to the front and subsequently he complained of restless nights due to pain in the back of his neck and low back.

Dr. Vitt stated that the examination revealed marked muscle spasm of the posterior cervical and upper trapezius muscles. He testified that muscle spasm was an involuntary reaction which occurred whenever there was an injury to the deeper structures, the ligaments, tendons and muscles. Tests made of the head and neck produced pain and an examination of the back revealed tenderness and swelling in the lumbo-sacral area. Flexion and extension of the back were difficult and painful and produced right sciatic pain. He stated that x-rays of the neck showed small, mild hypertrophic arthritic spurs of the vertebral bodies, disc space narrowing to the level of the fifth and sixth cervical vertebrae, and partial straightening of the normal cervical curvature. The doctor testified that x-rays of the neck indicated a ruptured disc between C–5 and C–6. He said the muscle spasms indicated deep seated injury of recent origin. The doctor testified that his diagnosis in the case was that there had been traumatic injury to the posterior cervical area of the neck, internal disc derangement of C–5 and C–6, and lumbo-sacral sprain. He said the neck injury is permanent and disabling. He concluded that the appellant would never be able to work in unrestricted police work and the specific injury causing the disability was the traumatic injury to his neck produced by the automobile accident on November 16, 1962.

Dr. Vitt was the only doctor called as a witness but the report of Dr. J. E. Jensen, Medical Director for the Police Department, was introduced in evidence by the City Counselor. Dr. Jensen had examined Vlasak and on March 6, 1963, he reported to the Board by letter which in part is as follows:

"X-Ray examination shows no specific bone or joint injury except for disc space narrowing between C5 and C6 suggestive of cartilage degeneration. There is extensive mild to moderate arthritic changes throughout the spine.

"My examination shows no rigidity of the neck, some stiffness of the back, but at sometime he has sustained a rupture of the lateral head of the right biceps brachii muscle.

"It is my impression that this man has an osteoarthritis of the spine which has been aggravated by strain and possibly sprain of the back caused by the above mentioned accident.

"I do not feel that he has received treatment for sufficient time to determine that this disability justifies a retirement status.

"I would recommend that this man be referred to an orthopedist and/or a physio-therapist in a continuing effort to salvage him for continued police duty.

"Finally, I note that we do not have a report by Dr. Edwin Vitt. We shall try to obtain this by the 8th of March, 1963."

He again examined Vlasak and reported on May 1, 1963. His letter of that date had the following paragraph:

"It is my opinion that this condition will continue indefinitely. It is further my opinion the disability from the injury would not be nearly so severe or lasting if there had been no underlying arthritis."

Dr. Hellrung, a member of the Medical Board, reported his examination disclosed arthritic changes of metabolic origin of long standing. He further stated, "trauma being an aggravated factor of a dormant asymptomatic arthritic status prior to the

date of injury." Dr. Parker, also a member of the Medical Board, reported pre-existing arthritis of Vlasak's back of long standing. He further stated: "In view of the fact that this man was symptom-free before the accident and began to have pain on motion or prolonged standing immediately after the trauma, it is feasible that some intervertebral calcification had become loosened producing free movement and possible pressure on surrounding nerves." Dr. Young, the other member of the Medical Board, concluded his report by saying: "There were no symptoms of pre-existing arthritis before the injury: Injury can aggravate pre-existing osteoarthritis." All of them recommended treatment and Vlasak was treated by Dr. Macheck who found sixty percent of normal motion in the dorsal region, tenderness in the upper lumbar area, tenderness in the left trapezius muscle. He reported appellant stated he had lost twenty-five pounds since the accident. He said that the maximum benefit from physical therapy had been reached and it "may be good to consider retirement." The Medical Report of the Police Department was offered in evidence showing that Vlasak had been treated a number of years before for arthritic trouble with a knee. When questioned about this upon the stand, Vlasak stated that he had a swelling of the knee that was treated and the swelling subsided and he was never at any time told that he had arthritis by the treating physician. The Board, upon the foregoing evidence, made the following "FINDINGS, CONCLUSIONS AND ORDER":

"WHEREAS, the claim of Arthur G. Vlasak for accidental Disability Retirement Benefits was heard by the Board of Trustees on July 22, 1964; and

"WHEREAS, the testimony and other evidence adduced at the hearing has been carefully considered by the Members of the Board voting on the claim;

"It is Ordered and Decreed, as follows:

"(1) The Board finds that Arthur G. Vlasak was on active duty with the St. Louis Police Department as a Policeman from January 13, 1930, to June 14, 1963.

"(2) The Board finds that an arthritic condition existed prior to the accident relied upon by the Claimant.

"(3) The Board finds no sufficient evidence to show that the present physical condition of the Claimant was causally connected with such accident in any substantial manner.

"(4) The Board concludes that Arthur G. Vlasak is not entitled to Accidental Disability Retirement Benefits, and his claim therefor is accordingly denied.

"(5) The Board re-affirms its grant to Arthur G. Vlasak of Service Retirement Benefits effective June 15, 1963."

Neither the trial court nor this court may substitute its judgment on the evidence for that of the Board of Trustees of the Alternative System of the Police Retirement System. However, both the trial court and the Court of Appeals are required to ascertain whether the Board could have reasonably made its findings and reached its results on consideration of all the evidence before it. If the Board's findings and decisions are clearly contrary to the overwhelming weight of the evidence it is our duty to reverse or order further action as the matter may require. Section 536.140 RSMo 1959, V.A.M.S.; Johnson v. Priest, Mo.App., 398 S.W.2d 33, Heusmann v. Priest, Mo.App., 366 S.W.2d 42.

The evidence that Vlasak was injured in the line of duty and that the injury resulted in a disabling aggravation of a pre-existing arthritic condition, which was not until the accident disabling, is clear and cogent. It was not in any way contradicted, but rather enforced by the evidence offered by the City Counselor. It is true, as the respondent contends, that the Board is the judge of the credibility of witnesses, but that rule does not authorize it to arbitrarily disregard and ignore competent, substantial and undisputed testimony

of witnesses who are not shown by the record to have been impeached, and to base their findings upon conjecture or their own mere opinion, unsupported by sufficient competent evidence. Palm v. Southwest Missouri Wholesale Liquor Co., Mo. App., 176 S.W.2d 528; Sanderson v. Producers Commission Ass'n., 360 Mo. 571, 229 S.W.2d 563; Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149. All of the evidence indicates that Vlasak was injured accidentally to such an extent that he was disabled from carrying on his duties as a police officer.

For the reasons stated, the judgment of the Circuit Court affirming the decision of the Board of Trustees is reversed and the cause is remanded to the Circuit Court with directions to remand it to the Board of Trustees of the Alternative System of the Police Retirement System of St. Louis for action in conformity with the views herein expressed.

ANDERSON, P. J., and JAMES H. KEET, Jr., Special Judge, concur.