**Max L. JENNINGS, Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri, Division of Employment Security of Missouri, and D. W. Grace & Sons Construction, Inc., Respondents.**

No. 30219.

Missouri Court of Appeals, Western District.

April 2, 1979.

Stephens & Drake by Jerold L. Drake, Grant City, for appellant.

Sharon A. Willis, Kansas City, Rick V. Morris, Jefferson City, for Division of Employment Sec. of Missouri.

D. J. Chatfield, Jefferson City, for Labor and Industrial Relations Commission of Missouri.

Before HIGGINS, Special Judge, Presiding, and SWOFFORD, C. J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment in affirmance of denial of unemployment benefits claimed under Section 288.050 RSMo. The question is whether the finding that the employee left his employment voluntarily without good cause attributable to his work or to his employer is supported by competent and substantial evidence upon the whole record. Reversed.

Max Jennings was employed by D. W. Grace & Sons Construction, Inc., from June 1975 to October 28, 1976. His work was in construction and repair of grain elevators and other facilities. He was required to climb and work "in the air" at least fifty per cent of the time. The height of climb varied from 50 to 110 feet. There was no safety equipment unique to the job.

On October 28, 1976, he and the Grace crew were involved in repair of an elevator at Stanberry when his friend and fellow employee, "my former man underneath me," Charles Hill, was knocked off the top of the elevator and fell 120 feet to his death. "I didn't actually see him get hit. All I seen was that he was flying through the air."

The Grace crew did not work any more that week; some of the crew returned to work the middle of the following week. A different crew was hired to finish the Stanberry job. Mr. Jennings told his employer he would not be at work for awhile, and the employer understood. Mr. Jennings "felt upset and * * * kind of responsible and nervous. * * * just didn't feel good." He had no such feelings before the accident. He and his wife discussed their problems

following the accident. She felt "it could have been me just as well as it could have been Charlie Hill. * * * We decided I shouldn't climb anymore."

Mr. Jennings met with his employer around November 15, 1976, and "told him that under the circumstances and everything that I didn't want to do any more climbing * * * but, I'd go ahead and go work for him on the ground." He hoped to be able to climb again, "a little later next spring, maybe. * * * He said he didn't have any work so I suppose it's the same thing as being fired or laid off. However you want to put it." The employer acknowledged Mr. Jennings to be a good employee and encouraged him to seek unemployment benefits. He made such application and also sought, unsuccessfully, new employment.

Mrs. Jennings confirmed her husband's condition after the accident of October 28, 1976. " * * * he was very upset, worked up * * * he'd wake up in dreams at nights and dream of what happened. He was very upset, nervous, and they wasn't nothing I could do or say or anything to calm him * * *."

Mr. Grace had no way to keep Mr. Jennings on the job "as a supervisor," and "there is no way that you can work on the ground all the time." He offered the same kind of work that Mr. Jennings did before the accident, but he did not return to work after the accident.

The appeals tribunal found and decided: "The claimant worked for the employer in the construction business for about two years. He last worked on October 28, 1976, when another employee in the crew where the claimant was working making repairs on a grain elevator at Stanberry, Missouri, was killed in a fall. No further work was performed following the accident on that date and the employer's president later obtained another crew to complete the work. The employer president agreed with the claimant that he should take a few days off because of the death of his friend and fellow worker. After discussing the circumstances with his wife the claimant met with the employer president about two weeks later to inform him that the claimant and his wife had decided that the claimant would not continue working for the employer unless he be provided work that required no climbing. The employer president was unable to provide the claimant further work that required no climbing and the claimant elected to quit his job.

\* \* \* \* \* \*

" * * * the claimant became dissatisfied and quit his job after another employee was killed in a fall and the employer could not provide the claimant with further employment that required no climbing. The claimant's dissatisfaction with his work because it required climbing was not good cause within the meaning of the * * * provisions of the Law for quitting. There was no change in the hiring agreement. The work available to the claimant was the same work he had previously performed. By his refusal to continue his employment the claimant brought about his separation from work and it therefore was voluntary. * * * that the claimant left his work voluntarily on October 28, 1976, without good cause attributable to his work or to his employer."

Review of the foregoing decision was denied by the Industrial Commission and it became the decision of the Industrial Commission for purposes of judicial review. § 288.200(1) RSMo.

As to questions of fact, review is limited to ascertaining upon the whole record whether the Commission could have made its findings and decision, viewing the evidence in the light most favorable to the award; as to questions of law, the court is not bound by decisions of the Commission; and whether the favorable evidence establishes good cause is a question of law. *Belle St. Bank v. Ind. Com'n Div. of Emp. Sec.,* 547 S.W.2d 841, 844 (Mo.App.1977). See also *Union-May-Stern Co. v. Industrial Com'n,* 273 S.W.2d 766, 768 (Mo.App.1954); *LaPlante v. Industrial Com'n,* 367 S.W.2d

24, 27 (Mo.App.1963); *Citizens Bank of Shelbyville v. Industrial Com'n*, 428 S.W.2d 895 (Mo.App.1968).

■ The statement demonstrates competent and substantial evidence upon the whole record to support the finding that the employee voluntarily quit his employment. The remainder of the question requires examination of the conditions under which he quit.

■ The evidence was not that the employee was "dissatisfied," which is to say he was "offended," "vexed," or "annoyed" with his job. Roget's Thesaurus of the English language in Dictionary Form, Mawsom, Rev. Ed. 1936. It shows rather that plaintiff's decision to return to work on the ground and not to work further at the heights previously involved stemmed from his nervous, upset condition, fear of heights, and fear of the fate of his friend following the death of his friend. There was thus a causal connection between the work and the employee's reason for avoiding the climbing involved; and the reason was one "which reasonably would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Belle St. Bank v. Ind. Com'n*, supra, 547 S.W.2d l. c. 846.

The case is similar to *Bussman Mfg. Co. v. Industrial Com'n of Missouri*, 327 S.W.2d 487 (Mo.App.1959), where claimant took leave of absence from employer's factory for one month because of sickness and, when she returned, the only job offered her was her same work on a solder cutting machine which she refused because it made her nervous and she was to avoid work which made her nervous. The court held she quit work with good cause attributable to her employment within the meaning of the statute. Similarly, in *Wilson v. Labor & Indus. Rel. Com'n*, 573 S.W.2d 118 (Mo. App.1978), the record was insufficient to support finding that claimant left his employment without good cause attributable to his employment where claimant, primarily employed as a truck driver, also performed other work which required him to lean over and into a box resulting in injury to his back. He refused to resume the secondary work the following day because of the injury and injury-producing condition.

The legal deficiency in the Commission's decision is the failure to consider the whole record. "[A]n administrative agency may not arbitrarily disregard or ignore the testimony of a witness not shown to have been disbelieved or impeached by the agency. * * * Only if the agency makes a specific finding that the undisputed or unimpeached evidence is not entitled to credibility and is unworthy of belief may it be said that the evidence may be disregarded." *Wilson v. Labor & Indus. Rel. Com'n*, supra, 573 S.W.2d l. c. 121. Both Mr. and Mrs. Jennings testified that Mr. Jennings was upset, nervous, and afraid following the accident, and that he would not resume his work if it involved climbing. Such testimony was not found incredible or unworthy of belief. It stands unimpeached and uncontradicted, and the employee's problem was understood by the employer. Accordingly, the finding that the employee left without good cause is without evidentiary support by competent and substantial evidence on the whole record because of this failure of a factual or testimonial basis to refute the employee's assertion that he did not return to work because of his nerves, fears, and upset condition.

Judgment reversed and cause remanded with direction to remand the case to the Division of Employment Security for determination of benefits which may be due the employee.

All concur.