Marshall KNAPP, Plaintiff–Appellant,

v.

MISSOURI LOCAL GOVERNMENT EMPLOYEES RETIREMENT SYSTEM, Defendant–Respondent,

and

The City of Independence, Intervenor Defendant–Respondent.

No. WD 38359.

Missouri Court of Appeals, Western District.

Oct. 20, 1987.

William R. Merryman, Kansas City, for plaintiff-appellant.

Joe F. Willerth, Independence, for City of Independence.

Robert L. Hawkins III, Jefferson City, for Missouri Local Government Employees Retirement System.

Before CLARK, C.J., and KENNEDY and NUGENT, JJ.

NUGENT, Judge.

Plaintiff Marshall Knapp, a former employee of the intervenor defendant City of Independence, appeals the ruling of the trial court affirming the decision of the board of trustees of the defendant Missouri Local Government Employees Retirement System denying him duty disability benefits under § 70.680.[1]

Plaintiff claims that the board's decision is not supported by competent and substantial evidence upon the record as a whole, was not authorized by law, and was arbitrary, capricious, unreasonable and constituted an abuse of discretion. § 536.140. Specifically, he challenges the board's finding that his inability to perform his work is the result of his obesity rather than work-related injuries. That finding, he says, is not based on competent medical authority but on opinions of lay job supervisors and a hearsay memorandum prepared expressly for the hearing. Plaintiff also claims that the fact that he held the position of "apprentice journeyman lineman" on the date of his discharge does not by itself prove that he was not disabled. He says that the record substantially supports his claim that because of his work-related injuries he was

not able to perform his duties, and thus he is entitled to disability benefits.

The following admissible and uncontroverted evidence was presented at the administrative hearing held by the defendant board of trustees.

Plaintiff Knapp went to work for the power and light department of the intervenor city as an apprentice journeyman lineman on October 15, 1979. A month later he was demoted and reassigned to "secure necessary experience." On April 9, 1980, however, having satisfactorily completed a six month probationary period and received a recommendation for permanent status, he regained his earlier classification. At that time, Mr. Knapp, who stands five feet eleven inches in height, weighed 270 pounds.

On May 15, 1980, plaintiff fell twenty feet while descending from a utility pole. He landed on his feet and suffered fractures in both feet and fractures of the left ankle. He was able to return to work on September 17, but seven days later he suffered a second work-related injury to his left ankle. He returned to work on October 9. Shortly after that, the city's utility director recommended that plaintiff's promotion to journeyman lineman be delayed until he could be rated for a full six months.

Even though Mr. Knapp resumed his regular duties as an apprentice lineman, he testified that, because of the pain in his ankle, he could not stay up on the poles for more than a few minutes at a time. The record indicates that he worked with the underground crew until February, 1982, when he was reassigned to substation work. Again, he could not perform because of his inability to climb poles. He estimated that fifteen percent of a lineman's work is on the poles.

Because of his inability to work on the poles, plaintiff was reassigned in May to the meter shop where he stayed until his discharge. Although his classification remained "apprentice lineman," he did not

---

1. All sectional references are to Revised Statutes of Missouri, 1986.

perform as a lineman. Ordinarily, the meter shop assignment is but a short segment of an apprentice lineman's training. According to the department's director, Farley Banks, the department placed Mr. Knapp in the meter shop to give him work that he could do after his inability to perform the climbing and strenuous duties of a regular lineman became apparent. In response to an interrogatory [2] in another case, Mr. Banks stated that even after he had completed the meter training, Mr. Knapp was kept in the meter shop for compassionate reasons—because he had been hurt on the job and had proved unable after a lengthy convalescent leave to perform a lineman's tasks.

Plaintiff's merit ratings after his accidents and before his discharge generally reflected his inability to perform the duties of his position. His first merit rating dated April 9, 1980, (Intervenor's Exhibit No. 6) after almost six months on the job, gave plaintiff a satisfactory rating but recommended that he "get as much climbing experience as possible" and that he lose weight. The October 15, 1980, report (Intervenor's Exhibit No. 7) similarly indicated that plaintiff had a weight problem in climbing poles. The merit rating of February 2, 1981, (Intervenor's Exhibit No. 8) reported a marked improvement in plaintiff's job performance since returning from his accident and advised plaintiff to continue to lose weight and to keep up the good work. But before his discharge, plaintiff's last merit rating conducted on April 20, 1983, was unsatisfactory. The comments accompanying that rating stated that the kind of work he was suited for was work that did not require physical strain. They also noted that plaintiff's work was unsatisfactory because he was physically unable to perform as a journeyman lineman and that factors reducing the effectiveness of his work included his physical size and his need to stop and rest when working poles.

Giving a reduction in force as its reason, the city eliminated Mr. Knapp's position on July 31, 1983. On August 26 Mr. Knapp filed a timely application for duty disability retirement benefits under the Missouri Local Government Employees Retirement System. As required by § 70.680.3,[3] the system's board of trustees had Mr. Knapp evaluated by a medical committee of three physicians. Each of the physicians concluded that Mr. Knapp was permanently and totally disabled to perform the duties of a journeyman lineman and, therefore, should be considered eligible for disability retirement benefits.

In his evaluation Dr. L.F. Glaser stated: "It is my opinion that Mr. Knapp is totally and permanently physically incapacitated for duties of a journeyman lineman because it involves his climbing telephone poles which he cannot do safely nor comfortably because of degenerative changes of both ankles." According to Dr. Glaser's report, x-ray evidence of early mild degenerative changes of both left and right ankles included "some sclerosis of the tibial plafonds as well as some narrowing of the lateral portions of the ankle mortises bilaterally."

2. In its brief on this appeal the city characterizes this answer to the interrogatory as "clearly hearsay," but at the hearing before the board the city's attorney explicitly declined to object to the admission of the evidence of Mr. Banks' answer to that interrogatory.

3. Section 70.680.3 provides as follows:
Any member in service who has not attained the age and service requirements of section 70.645 and who becomes totally and permanently physically or mentally incapacitated for his duty as an employee, as the natural and proximate result of a personal injury or disease which the board finds to have arisen out of and in the course of his actual performance of duty as an employee, may be retired by the board upon written application filed with the board by or on behalf of the member provided, that after a medical examination of such member made by or under the direction of a medical committee consisting of three physicians, one of whom shall be selected by the board, one by or on behalf of such member, and the third by the first two physicians so named, the medical committee reports to the board, by majority opinion in writing, that such member is physically or mentally totally incapacitated for the further performance of duty, that such incapacity will probably be permanent, and that such member should be retired.

In his opinion Dr. J.S. Sanders, the system's medical advisor, wrote, "[I]n view of the injuries sustained in the fall and subsequent arthritic changes in the ankles, he would be unable to pursue his occupation as a journeyman lineman." He added that the plaintiff should not be disabled with respect to many other activities but that "climbing poles would seem to be prohibited in view of this type of injury to both lower extremities."

Dr. R.E. Bregant agreed with Dr. Sanders that Mr. Knapp could engage in many other activities that do not require long periods of standing or weight bearing. Nevertheless, he concluded that the plaintiff was "permanently and totally disabled and unable to pursue his job of journeyman lineman."

At its April 6, 1984, meeting, the board of trustees denied Mr. Knapp's duty disability application without hearing evidence. The board's letter of April 9 to the city's personnel director stated that the members did not think sufficient evidence was available to permit them to approve Mr. Knapp's application. The letter went on to advise Mr. Knapp that, according to § 70.605.16, he could appeal the decision under the provisions of Chapter 536, Revised Statutes of Missouri, within thirty days, and that the board would supply him with information about the formal procedure he should follow in making his appeal.

Accordingly, on May 8 Mr. Knapp filed in the circuit court a petition for declaratory judgment and for review along with various discovery motions.[4] The board moved to dismiss the petition as prematurely filed on the ground that the plaintiff had yet to exhaust a remaining administrative remedy as required by law. That step consisted of a hearing that the board would be willing to provide.

Given the misleading wording of the board's notice to Mr. Knapp regarding his right of appeal, the parties signed the following stipulation to dispose of the board's motion to dismiss:

1. By reason of the wording and language used by the defendant (board) in its decision which gave rise to the pending suit and plaintiff's counsel's interpretation thereof, the present action was brought, notwithstanding the fact that there was one additional administrative step to be pursued by plaintiff.

2. The defendant has made arrangements, notwithstanding the pendency of this litigation, for the administrative process to be completed.

3. The defendant stipulates and agrees to withdraw its Motion to Dismiss, now pending in the present litigation.

4. The parties stipulate and agree that this cause may be held in abeyance pending completion of the administrative process, such that plaintiff will not be caused to incur or expend any additional monies for court costs and in connection with such agreement, would request the Court to so hold this cause in abeyance.

The hearing before the board of trustees took place on January 17, 1985, in Jefferson City. The plaintiff's position was that he sustained an injury in the course of his employment which ultimately prevented him from performing his regular duties and, in light of the medical committee's reports, entitled him to duty disability benefits. The intervenor city contended that the plaintiff's inability to perform his duties was due to his weight problem and not to the injury. The city also claimed that plaintiff was not disabled and after his injury continued to work as an apprentice journeyman lineman until his position was eliminated by an economically motivated reduction in force.

To support its position, the city introduced its Exhibits 6, 7 and 8, plaintiff's merit ratings of April 9 and October 15, 1980, and February 2, 1981, attributing plaintiff's difficulty in pole climbing to his weight. Those exhibits were admitted over plaintiff's counsel's objection:

---

**4.** This pleading makes it appear that the board considered little or no evidence at the meeting. Plaintiff alleged in Count II that the board denied him his right to a medical evaluation under § 70.680.3 and his right to a hearing under § 70.605.16 and Chapter 536.

I have a very specifically limited objection to the extent that we have a supervisor attempting here to make a medical judgment as to his, the reason for his [plaintiff's] ability or inability to perform certain functions of his tasks when he [the supervisor] is not shown to be properly qualified to give such opinions.

The issue of whether or not he could climb poles without broken ankles given his weight vis a vis climbing poles with broken ankles given his weight is one of medical origin and can only be resolved by medical testimony; and I think that this is a behind the door attempt on the part of the City to introduce testimony that is not qualified with respect to that issue and would object to those conclusions contained in these exhibits for that reason....

Plaintiff's counsel also objected to the admission of Intervenor's Exhibit No. 11, a memorandum dated January 15, 1985, summarizing the plaintiff's employment history and prepared by plaintiff's supervisors, Dave Ferguson and Wes Corlett. In that memorandum, they concluded that "Marshall Knapp had above average electrical knowledge but could not apply it nor could he meet climbing requirements of Journeyman Lineman. Marshall's main problem was being overweight, which was discussed with him on numerous occasions."

Neither Mr. Ferguson nor Mr. Corlett appeared at the hearing. The city introduced the memorandum through the testimony of personnel director George Vermillion. He acknowledged that he had no personal knowledge of the events described in the memorandum, that it was prepared for the hearing, and that it was offered as Mr. Ferguson's statement in lieu of his appearance at the hearing.

Plaintiff's counsel objected that neither Mr. Ferguson nor Mr. Corlett was competent to testify to matters properly within the "medical arena." He specifically objected to the conclusion that plaintiff's main problem was being overweight: "That is a medical conclusion, and obviously there are differences with the three specialists who have filed their opinions in this case...." He further objected to the memorandum as hearsay, but the board admitted it into evidence.

On March 21, 1985, the board denied Mr. Knapp duty disability benefits. It found that "[t]he sole physical deficiency of applicant with respect to performing his duties was his inability to climb power poles which was primarily due to his overweight condition...."

The board concluded as a matter of law that based on the evidence it could not say that plaintiff "is totally and permanently disabled and that such disability or incapacity is a natural and proximate result to [sic] a personal injury or disease which arose out and in the course of applicant's actual performance of duty as an employee...."

On April 3, thirteen days after the board issued its decision, plaintiff's counsel notified the trial court and the parties that the administrative process was complete, and, in effect, announced his purpose to pursue plaintiff's remedies under the prematurely filed petition for review that the parties had agreed to hold in abeyance pending the administrative hearing.

On August 24, 1985, the plaintiff sought leave to file an amended petition for review. The court granted the motion and plaintiff filed the amended petition on September 6. The city then moved the court to reconsider the order permitting plaintiff to file his amended petition on the grounds that plaintiff had failed to file a petition for review within thirty days of the board's March 21 decision as required by § 536.110 and had failed to file a transcript of the proceedings as required by § 536.130. On November 26 the trial court sustained the city's motion and entered an order dismissing plaintiff's amended petition with prejudice. The plaintiff then moved the court to reconsider and to set aside the judgment, and the court sustained that motion without prejudice for later reconsideration.

On April 7, 1986, the trial court ordered that the plaintiff's petition for review be denied and that the board's decision be affirmed.

## I.

The board and the city contend that the board's decision must be affirmed regardless of the merits of plaintiff's claim because the plaintiff failed to file his petition for review within thirty days of the board's decision as required by § 536.110.1, thus depriving the circuit court of appellate jurisdiction.

In so saying, the defendants assert that the premature filing of plaintiff's original petition and the eventual reactivation of that petition had no legal effect in satisfying the filing requirement of § 536.110.1. *Moore v. Damos,* 489 S.W.2d 465, 469 (Mo. App.1972). *See also Lafayette Federal Savings and Loan of Greater St. Louis v. Koontz,* 516 S.W.2d 502, 504 (Mo.App.1974) (the court may not enlarge the period for the filing of such a petition). In essence, defendants claim that plaintiff failed to perfect his appeal until he filed his amended petition some five months after the statutory period had expired.

We disagree. A petition for review prematurely filed should be treated as filed immediately after the issuance of the agency decision. *Cf.* Rule 81.05(b). Moreover, the city withdrew its motion to dismiss under the terms of a stipulation that the original petition be held in abeyance pending completion of the administrative process. The parties agreed to the stipulation because of the confusing wording of the board's letter advising plaintiff of its summary denial of disability benefits and instructing him to appeal that decision notwithstanding the fact that plaintiff had another administrative remedy to pursue—a hearing before the board. Under the circumstances, the defendants waived any right they had to dismissal of the original petition.

Having established that the original petition remained on file, we next consider whether the amended petition relates back to the date of filing of the original pleading under the provisions of Rule 55.33(c).[5]

In *Link v. Ise,* 716 S.W.2d 805, 807–09 (Mo.App.1986), this court summarized the recent developments in the law governing relation back of amendments. Before the Missouri Supreme Court adopted Rule 55.-33(c) in January, 1973, various common law tests evolved to determine the question of relation back. After the rule was adopted but before it became effective, the Supreme Court handed down *Laux v. Motor Carriers Council of St. Louis, Inc.,* 499 S.W.2d 805 (Mo.1973), its last expression on the issue of relation back. In *Laux* (at 807–08) the Supreme Court, making no reference to the newly adopted rule, stated:

> An amended pleading relates back to the time of the filing of the original pleading where the claim stated in the amended pleading is the same as that stated in the original one. *Hilderbrand v. Anderson,* 270 S.W.2d 406, 412[10] (Mo.App.1954). But "an amendment will not relate back to the filing of the original petition and save a cause of action from the bar of the statute of limitations 'if the proof necessary to support the pleading as amended is different from the proof necessary to support the same pleading before such amendment.'" *Miller v. Werner,* 431 S.W.2d 116, 118 (Mo.1968); *McDaniel v. Lovelace,* 439 S.W.2d 906, 909[2] [ (Mo.1969) ].

The *Link* court noted that this court's Eastern District and Western District have developed different standards for applying Rule 55.33(c). The Eastern District determined in *Hawkins v. Hawkins,* 533 S.W.2d 634, 638 (Mo.App.1976), and its progeny that, whereas an amendment that states an entirely new claim for relief based on different facts will not relate back, an amended pleading that arose out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" will relate back to the original petition. Relying on the plain language of the rule, the *Hawkins* court stated, "We believe that Rule 55.33(c) was specifically

---

5. Rule 55.33(c) in its pertinent part provides as follows:

 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

designed to change the law as set forth in *Miller v. Werner, supra,* [431 S.W.2d 116, 118 (Mo.1968)] and *McDaniel v. Lovelace, supra* [439 S.W.2d 906, 909 (Mo.1969)]." According to *Link,* the *Hawkins* rule allows a much broader group of amendments to relate back than does a rule which requires the amendment to be based on the same cause of action. The Western District, on the other hand, has continued to follow the law set forth in *Laux, supra,* and its ancestors, *Miller* and *McDaniel.* See *Link, supra* at 808–09.[6]

■ The fact that the law of relation back is unsettled does not foreclose our holding that the plaintiff's amended petition related back to the date of his original petition for purposes of satisfying the timely filing requirement of § 536.110.1 because the present circumstances satisfy the tests of both the Eastern District and the Western District.

In Count I of his original petition, the plaintiff requested that the trial court review the board's April 9, 1984, decision disallowing his application and determine his rights to disability retirement benefits. In Count II, an alternative to Count I, plaintiff alleged that the board's decision was improper because the board did not provide him notice and an evidentiary hearing, as required by § 70.605.16 and Chapter 536, and did not arrange an independent medical examination by a medical committee as required by § 70.680.3.

When the plaintiff learned that the board was willing to give him an evidentiary hearing, the parties agreed to hold the original petition in abeyance. Upon completion of the administrative process, the plaintiff proceeded under his original petition without objection. He amended the petition five months later. In his amended petition he presented a single count seeking reversal of the board's decision denying his ap-plication for disability benefits after the evidentiary hearing.

The difference between the two petitions can be reduced to the following: In his original petition, plaintiff sought review of the board's decision denying him disability retirement benefits made after a board meeting. Since plaintiff was not permitted to present evidence at the meeting, he requested further relief because he was denied a hearing. In his amended petition, plaintiff sought review of the board's decision denying him disability retirement benefits made after the board held the evidentiary hearing. The amended petition serves to set forth events that happened after the date of the original pleading by way of deleting references to the fact that, initially, plaintiff had not had an evidentiary hearing.

The amendment does not state an entirely new claim for relief based on different facts. Instead the amendment arose out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Therefore, the amended pleading meets the test for relation back set forth by the Eastern District in *Hawkins, supra,* 533 S.W.2d at 638.

Likewise, the amendment meets the test set forth by the Supreme Court in the *Laux* case and adopted by the Western District: The claim for disability retirement benefits stated in the amended pleading is the same as that stated in the original pleading, and the pleading as amended does not require proof of ultimate facts other than those that would have been necessary to sustain the original petition.

■ The defendants next contend that the plaintiff violated his statutory duty under § 536.130 to prepare and file a record on appeal during the time the original petition was in force. That requirement is not jurisdictional and, moreover, the circuit court had discretion to extend the time for

---

6. This court recently transferred *Grandview Bank & Trust Company v. Stinson, Mag & Fizzell,* No. WD 38,474 (Mo.App. April 21, 1987) to the Supreme Court on the certification that it is contrary to the Eastern District opinion in *Hawkins v. Hawkins,* 533 S.W.2d 634 (Mo.App.1976), and also sustained a motion to transfer *Koerper & Company, Inc. v. Unitel International, Inc.,* No. WD 38,121 (Mo.App. Jan 6, 1987), to the Supreme Court to clarify the law of relation back of amendments under Rule 55.33(c). *Cf. Troxell v. Welch,* 687 S.W.2d 902, 910 (Mo.App.1985).

filing the record on appeal. *See Bresnahan v. Bass*, 562 S.W.2d 385, 389 (Mo.App. 1978); *Suburban Bank of Kansas City v. Proposed Jackson County State Bank of Kansas City*, 326 S.W.2d 420, 423 (Mo.App. 1959). We cannot say that the circuit court abused its discretion under the circumstances.

## II.

We turn now to the substantive questions raised by plaintiff's appeal. Mr. Knapp first claims that the board's conclusion that his inability to perform his work was primarily due to his weight rather than his work-related injuries was not supported by competent and substantial evidence based upon the record as a whole.

According to the plaintiff, the only evidence from which the board could have drawn such a conclusion consisted of several job performance evaluations and the memorandum prepared for use at the hearing by Dave Ferguson and Wes Corlett. He contends that this lay opinion evidence is not competent and cannot serve as the basis for the board's decision because the cause of his inability to perform his duties is an issue peculiarly within the competence of medical experts. Plaintiff further asserts that the memorandum is hearsay. He points out that the board's decision runs counter to the opinions of three physicians who found him to be permanently and totally disabled and unable to pursue his job as journeyman lineman because of the injuries he sustained in the course of his employment.

### a.

Plaintiff's claim in this case must be considered in the context of the system that the legislature has created in §§ 70.-600 through 70.755 for the retirement of employees of covered political subdivisions. That legislation confers upon the covered employee legal rights in the pension fund that the board may not deny without due process of law, and those rights are private rights within the meaning of Article V, § 18, of the Missouri Constitution. *State ex rel. Police Retirement System of the City of St. Louis v. Murphy*, 359 Mo. 854, 224 S.W.2d 68, 72–73 (1949) (en banc).

Under § 70.680.3 an employee with five years of service who has not attained his minimum service retirement age (60 in plaintiff's case) and who is totally and permanently incapacitated for his duty by reason of an on-the-job injury may be retired for disability. Then his entitlement to benefits is subject, nevertheless, to the following provisions.

Section 70.680.5 requires that the retirant undergo a medical examination at least once in each of the first five years of retirement and at least once in each three-year period after that. If he refuses, his disability benefits must be suspended, and if he persists in his refusal for one year, they will be revoked. If the examining physician reports that he is able to resume his duties, the retirant may demand examination by a committee of three physicians. If the committee finds that the retirant is able to resume his duties, his disability retirement shall terminate.

Section 70.680.6 further provides that, if such a retirant performs personal services in a gainful occupation, the amount of his disability allowance may not exceed the difference between his final average salary and the total of such remuneration and any benefit that he receives from the federal social security disability insurance program on account of his disability. A similar cap is placed on a retirant's disability allowance if he also receives benefits from workers' compensation for the same disability. § 70.685.

### b.

In this case the scope of our review is that required by Article V, § 18, of the Missouri Constitution. That section provides that such review shall include a determination whether the final decision of an administrative agency is authorized by law and, in cases in which the law calls for a hearing, whether the decision is "supported by competent and substantial evidence upon the whole record." *State ex rel. Marco Sales, Inc. v. Public Service Commission*, 685 S.W.2d 216, 218 (Mo.App.1984).

On appeal, the court considers the decision of the agency or board, not the judgment of the circuit court. *Missouri National Education Association v. Missouri State Board of Mediation*, 695 S.W.2d 894, 896 (Mo.1985) (en banc).

In reviewing the board's decision, we must ascertain whether the board could reasonably have made its findings and reached its decision on the basis of all the evidence before it. If its findings are clearly contrary to the overwhelming weight of the evidence, we must reverse and order further action as the case may require. *Vlasak v. Alternative System of the Police Retirement System*, 435 S.W.2d 726, 729 (Mo.App.1968). Moreover, where the action of the board does not involve exercise of its administrative discretion in light of the facts but only the application of the law to the facts, the reviewing court may weigh the evidence for itself and determine the facts accordingly, giving due weight to the opportunity of the board to observe the witnesses. § 536.140.3 and *Bergman v. Board of Trustees of Firemen's Retirement System of St. Louis*, 425 S.W.2d 143, 146–47 (Mo.1968); *see also Missouri Church of Scientology v. State Tax Commission*, 560 S.W.2d 837, 838–39 (Mo.1977) (en banc), *appeal dismissed*, 439 U.S. 803, 99 S.Ct. 57, 58 L.Ed.2d 95 (1978), and *J.E. Williams Construction Co. v. Spradling*, 555 S.W.2d 16, 23 (Mo.1977) (en banc; per curiam).

> In *Bergman* the court held at 47 that [a]fter the facts are determined, appellant either is or is not entitled to the increased pension benefits as a matter of law. Therefore, in determining whether the action of the Board of Trustees is supported by competent and substantial evidence, this court may weigh the evidence and determine the facts accordingly, subject to the above rule of deference to the extent appropriate under the circumstances.

*See also Sprague v. City of Springfield*, 641 S.W.2d 814, 815–16 (Mo.App.1982).

Finally, questions arising as to uncontroverted or conceded facts are questions of law finally determinable by the courts.

*Kristanik v. Chevrolet Motor Co.*, 335 Mo. 60, 70 S.W.2d 890, 894 (1934); *Sanderson v. Producers Commission Association*, 241 S.W.2d 273, 275 (Mo.App.1951); and *Fear v. Ebony Paint Manufacturing Co.*, 238 Mo.App. 500, 181 S.W.2d 559, 563 (1944).

### c.

■ In this case, plaintiff Knapp had the burden of establishing his entitlement to retirement benefits. Thus he had to make at least a prima facie case that he was totally and permanently incapacitated for his duty as the natural and proximate result of an on-the-job injury. *Cf. Ellis v. State Department of Public Health and Welfare*, 365 Mo. 614, 285 S.W.2d 634, 640–41 (1955) (en banc). If he adduced sufficient credible, competent and substantial evidence to make a prima facie case, the burden shifted to the board and the city to show that either plaintiff was not so incapacitated or that his disability was not the proximate result of an employment injury. *Id.* In this case the defendants did not dispute plaintiff's injury.

■ At the January, 1985, hearing, the board of trustees had before it as a board exhibit the reports of the committee of three physicians. Those reports are records required by law to be made to the board of trustees and, therefore, constitute public records. As such they are competent evidence to establish the facts they are required to recite. They are admissible without further statutory aid and are not excludible hearsay. *Edwards v. Firemen's Retirement System of St. Louis*, 410 S.W. 2d 560 (Mo.App.1966). The physicians' unanimous medical opinion was that, as the result of his ankle injuries, Mr. Knapp was totally and permanently physically incapacitated from pursuing his job as a journeyman lineman. The defendants do not dispute the fact that plaintiff suffered his injuries in the course of the performance of his lineman's duties. Thus, the evidence before the board established at the very least a prima facie case for plaintiff's claim.

■ Before passing to a discussion of the deficiency of the defendants' evidence, we note that in finding plaintiff's "sole deficiency ... with respect to performing his duties was his inability to climb power poles, which was primarily due to his overweight condition ...," the board totally ignored the reports of the three doctors and never mentioned them. An administrative agency may not arbitrarily ignore relevant evidence not shown to be disbelieved. Only if it makes a specific finding that undisputed or unimpeached evidence is incredible and is unworthy of belief may it disregard such evidence. *Stevinson v. Labor and Industrial Relations Commission*, 654 S.W.2d 373, 374–75 (Mo.App. 1983), citing *Jennings v. Labor and Industrial Relations Commission*, 579 S.W.2d 845, 848 (Mo.App.1979), and *Wilson v. Labor and Industrial Relations Commission*, 573 S.W.2d 118 (Mo.App.1978), at 121. *See also Missouri Church of Scientology v. State Tax Commission, supra,* 560 S.W. 2d at 843. The board made no such specific finding in this case. Therefore, it could not properly ignore the evidence as it did. No evidence was offered that in any way challenged the findings of the three doctors. Beyond any doubt, those opinions were substantial and competent evidence of the plaintiff's physical incapacity, its cause, its extent and its permanence.

d.

The city, on the other hand, adduced no medical evidence at all. It relied solely on lay opinion, the main thrust of which was that because of his weight plaintiff was unable to climb utility poles. The city also contended that, since Mr. Knapp had returned to work after his ankle injuries in the same job classification, he was not totally and permanently disabled.

Once plaintiff's case was established, the burden shifted to the defendants to rebut plaintiff's case with substantial and competent evidence that, even if plaintiff was injured in performing his duties, those injuries did not cause his total and permanent incapacity to perform a lineman's duties.

■ "Substantial evidence" is evidence that if true has probative force upon the issues; it includes only competent evidence, not incompetent evidence. *State ex rel. Marco Sales, Inc. v. Public Service Commission, supra,* 685 S.W.2d at 218. "Competent evidence" in turn is relevant and admissible evidence that is capable of establishing the fact in issue, *Shepherd v. City of Omaha,* 194 Neb. 813, 235 N.W.2d 873, 875 (1975), "[t]hat which the very nature of the thing to be proven requires...." BLACK'S LAW DICTIONARY 257 (5th ed. 1979). Hearsay evidence is not competent and substantial evidence to support a finding of fact by an administrative agency or board. *Downs v. Personnel Advisory Board,* 671 S.W.2d 12, 15 (Mo.App.1984) (per curiam); *Wilson v. Labor and Industrial Relations Commission, supra,* 573 S.W.2d at 121, (Mo.App. 1978), citing *State ex rel. DeWeese v. Morris,* 359 Mo. 194, 221 S.W.2d 206, 209 (1949).

■ The defendants argue that the board's decision was supported by competent and substantial evidence: the three merit ratings and the Ferguson–Corlett memorandum prepared for use at the hearing instead of the appearance of Mr. Ferguson at the hearing. In truth, however, the defendants' evidence suffered from the twin vices of being incompetent hearsay.

■ All of defendants' evidence was incompetent because their only "witnesses" were laymen (none of whom appeared to testify) who were totally unqualified to testify as expert medical witnesses to rebut the reports of the three doctors. The lay "witnesses" were not shown to be competent to render opinions as to the cause of plaintiff's disability, the extent (that is, the totality or not) of his incapacity or its permanency—all questions requiring expert medical testimony. Where a fact finder must determine medical causation that is not within common knowledge or experience, scientific evidence is required to establish the cause of an alleged disability, in this case, plaintiff's inability to climb utility poles. *Clevenger v. Labor and Industrial Relations Commission,* 600 S.W.2d 675,

676 (Mo.App.1980). Questions of the medical causation, nature, extent, and permanency of disabilities following physical injury are medical questions unless the evidence shows facts that lie within the realm of lay understanding. *Ford v. Bi–State Development Agency*, 677 S.W.2d 899, 903–04 (Mo.App.1984). Expert medical evidence was necessary here to show the cause of plaintiff's incapacity, its extent and its permanence. *State Farm Mutual Automobile Insurance Co. v. Underwood*, 377 S.W.2d 459, 463 (Mo.1964) (en banc). This is particularly true where the opponent's evidence is entirely the expert medical opinion of physicians as it was here. *New York Life Insurance Co. v. Feinberg*, 229 S.W.2d 531, 537 (Mo.1950).

The extent of plaintiff's incapacity and its permanence were directly in issue, and defendants' evidence failed even to address those questions. The only competent evidence before the board on those two issues was the written reports of the three physicians, and with good reason the board and the city have raised no question as to the competence or substantiality of that evidence.

The three merit ratings on which defendants rely are patent hearsay declarations. Plaintiff objected to them, however, only on the ground that the "witnesses," (as defendants refers to them) whose "testimony" (as defendants refers to their declarations) the ratings incorporated, were incompetent to testify as expert medical witnesses. As we have already shown, plaintiff's objection to the competency of that evidence was sound. Hearsay not objected to may be considered for whatever it is worth. *Mills v. The Federal Soldiers Home of Missouri*, 549 S.W.2d 862, 867 (Mo.1977) (en banc). In this instance the hearsay declarations found in the merit ratings were not merely incompetent because of the want of the declarants' testimonial qualifications. They had no probative value on issues of causation or the extent or permanence of plaintiff's incapacity. To say as they did that plaintiff had a "weight problem" in climbing poles does not prove that his disability was caused by his size. Such "evidence" as is contained in Exhibits

5, 6, 7 and 8 is not substantial and competent evidence sufficient to support the board's finding.

Exactly the same thing must be said of the Ferguson–Corlett memorandum of January 15, 1985, prepared for the hearing as a substitute for Mr. Ferguson's live testimony. In addition, however, it was undisguised hearsay, and plaintiff's objection to it should have been sustained. As properly objected to hearsay, the memorandum was totally worthless as evidence in this administrative hearing. *Wilson v. Labor and Industrial Relations Commission, supra*, 573 S.W.2d at 121.

The evidence favoring plaintiff's application for retirement benefits was for all practical purposes uncontroverted. No competent testimony or competent admissible documents were offered to contradict the unanimous opinions of the doctors that plaintiff's injuries incapacitated him to do the work of a lineman. Defendants called none of plaintiff's co-workers or superiors who may have had first-hand knowledge of the reasons for his inability to do the work. Mr. Knapp weighed 270 pounds when he was hired. Presumably, if he was unable to work on the poles because of his weight during his six-month probationary period, his fellow workers could have testified as to the reason for his inability during that time, which was before his fall from the pole. The absence of such live testimony may be better understood when one recalls that at the end of that probationary period, despite his weight, plaintiff was promoted, commended and placed on permanent status.

 Finally, defendants seem to argue that, despite the doctors' unanimous opinion, Mr. Knapp was not incapacitated for his duty as a lineman. They point to his return to work in the same job classification and his retention until he was "RIFed" for economic reasons. The city is bound, however, by the sworn statement of its department director, Farley Banks. He said that, after plaintiff had been hurt and could not perform as a lineman, "for compassionate reasons" the department kept

plaintiff in the meter shop to give him work that he could do. The fact that a worker who is eligible to retire stays on in his employment, absent other evidence of his ability to work, does not constitute conclusive evidence of his lack of disability. *Callesto v. Secretary of Health and Human Services,* 587 F.Supp. 1427, 1428–30 (W.D. N.Y.1984). *Cf. Davis v. Brezner,* 380 S.W. 2d 523, 528 (Mo.App.1964) (the fact that worker's compensation claimant has been able to work and draw wages is not conclusive evidence against an award for permanent partial disability).

Moreover, the retirement statute does not require that to be entitled to retirement benefits the worker be totally unable to do work of any kind. The statutory retirement scheme contemplates that a retirant will in some cases be employed in other work, and it makes provisions for reduction of retirement benefits in those cases. § 70.680.6. Nor has the statute created a "use it or lose it" plan requiring a disabled worker to seek retirement as soon as he becomes disabled. The fact that Mr. Knapp clung to his job as long as the city would tolerate him and delayed his application for retirement does not prove that he was able to perform his duties in the absence of affirmative evidence that he was. The defendants adduced no such evidence.

### Conclusion

The defendants abjectly failed to adduce admissible, substantial and competent evidence on the issues of plaintiff's disability, its cause, extent and permanence. Nothing in the record as a whole rebuts plaintiff's prima facie case establishing by substantial and competent evidence his right under the statute to duty disability benefits under § 70.680.3. The board's decision was, therefore, entirely unsupported by substantial and competent evidence, and its decision was wrong and must be reversed.

Accordingly, we reverse the judgment of the circuit court and remand the case to it with directions to reverse the order of the board and to remand the case to the board with directions to award plaintiff Knapp the net retirement benefits due him as of

and since the date of his application on August 26, 1983, with interest at the statutory rate or rates since that date. The circuit court's order of remand shall direct the board to reconvene the hearing on plaintiff's application to determine what, if any, remuneration Mr. Knapp has received for his personal services rendered in a gainful occupation since August 26, 1983, together with any benefits plaintiff has received since that date from federal social security old age, survivors, and disability insurance programs on account of his disability, if any, so that it can calculate under the provisions of § 70.680.6 the net benefits, if any, due Mr. Knapp since that date from the Missouri Local Government Employees Retirement System. *Avis Rent A Car Systems, Inc. v. State Tax Commission,* 716 S.W.2d 871, 875 (Mo.App.1986); *Downs v. Personnel Advisory Board,* 671 S.W.2d 12, 16–17 (Mo.App.1984) (per curiam), citing *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138 (Mo. 1974) (en banc); and *Vlasak v. Alternative System of the Police Retirement System of St. Louis, supra,* 435 S.W.2d at 730. *Cf. Kristanik v. Chevrolet Motor Co., supra,* 335 Mo. 60, 70 S.W.2d at 894.

All concur.